ALBERT-SHERIDAN, APPELLANT AND SHOPPER, BARRINGTON VILLAS, COUNCIL FOR HAPPINESS, GENERAL BRIEFING, GOLDEN, CHAPTER 7, TRUSTEE. Good morning, Your Honors, may it please the Court, Lenore Albert, Appellant, that her. All right. And Ms. Albert-Sheridan, do you wish to reserve time? Yes. Five minutes, please. Okay. Thank you. Well, just listening to your prior oral argument, I have to say there's something that's procedurally wrong that appears in bankruptcy when we allow trustees maybe to take control of a claim that might be exempt, and maybe we should have those exemptions heard before litigations ensue that are in bankruptcy cases. And now I'll get to my oral argument. I apologize. If you can't hear me, let me know. I'm getting in the middle of a cold. I'm not sure what it is. I'm hopefully getting over it. Well, you're coming in loud and clear, and I'm with you in solidarity, so go ahead. Thank you. Okay, this is the second part of the appeal with regard to the sale and compromise. This is about the exemption. As the Court can see, the oral argument was very short because my papers were late filed in this case, and the judge only allowed me to orally argue on whether or not I should get a continuance or allow it to be heard with regard to the proof of service. Trustees' counsel characterizes my representation. I did not get the moving papers because I said, well, I don't think I got them as being contradictory. I see that as still saying the same thing. It's just that they're saying that they sent them. I just didn't receive them. One thing I didn't point out in my brief, but I want to point out to the Court, if you look at just the docket, when that paper was filed, that was document number 410. That was filed like on December 20th or 21st of 2018. By December 31st, 2018, we were at docket 434. By the time of the hearing, which was January 30th or 31st, we were at docket 482. So you're talking about 70 different docket entry items alone in that docket over a 30-day period. This was a very fast-moving case. The case was filed in 2018 priority at docket over 400. That's over an entry a day. So it slipped through the cracks. I asked for an evidentiary hearing. I asked to continue. I believe that, especially because this was with regard to an exemption, it should have been heard on the merits. Now, I'm going to get to, and I can't imagine that this Court of Appeal would just sign off and say, fine, late paper, so we're going to go ahead and exclude the exemption. So I'm going to go under res judicata and collateral estoppel. As far as the res judicata argument, you have to be at the same parties or privy, same cause of action, finally determined on the merits. Well, here I've supplied you with the court reporter's transcript of May 2018, where the judge clearly said, well, since this claim was not liquidated at that time, I was still in Chapter 13, running my own case, we're supposed to go to trial June 1st, 2018, and the judge said, well, just do that second part of the analysis, amend your claim after you get some dollars to put in there. I didn't obviously appeal that, because it didn't seem like it should have been appealed at that point. Well, there were two objections. Yeah, one was filed by the trustee and one was filed by Ford. Right. And both of them do, I mean, Judge Smith went through a exhaustive tentative in the trustees and does mention the need for proof of your support. But it was really hammered home in the tentative regarding the Ford Motor exemption. So you can't just take the trustees, because that's where it appears all that language came from, and the trustees' exemption objection dealt with much more than just Ford. Ford was pretty focused. They just cared about them, and the judge said pretty clearly that you had not established anything. As a matter of fact, I believe your position was you didn't have to. Right. Yeah. At the time, because it was an unliquidated claim, it's a personal injury, it was exempt. You also believe that you didn't have the burden of proof. Right. I didn't believe, and I still don't believe that looking at the case log. I have cases that say the objector has the burden of proof. They didn't come up with anything, and that was where I stood. But the judge, again, these hearings were all in the same day, long hearings. My understanding, though, was when Judge Smith was talking about, this is without prejudice. Obviously, I mean, in a way, we're talking about exemptions that could be amended at any time anyway. So how could it be with prejudice? How could you- That's the preclusion aspect. Right. Right. Yeah. How could you ever preclude it when you amend it? And we did have an amended one, and if it's an amended one, it's not exactly the same as the first one anyway. Well, it has to be not exactly the same. I mean, you can't amend it. You can't use and then amend it and say, same thing, not precluded, right? Right. Exactly. And it was different because if you look at the schedule, in my case, you had to look at the A and B along with the exemption. So it was different because when you looked at the A and B, it listed it out differently. So the A and B was amended in May, and then the exemption was filed. The amended exemption was filed in November. What was the difference between the exemptions? The difference between the exemptions, the first one, the A and B just had TBD. It didn't have a dollar amount at all. And it had this 704, I don't quote me, .140 or whatever for the personal injury. And then the second one literally listed out each case, so it listed out for credit. It gave the exact amount. It came out to be $1.9 million total with all the cases, and then the exemption on that specific amount. And that had the amount in there. So there was a difference. The difference was it's liquidated versus unliquidated. I didn't put down the amount of the liquidated because I was contesting that settlement amount of the $167,500. So there was a difference. I know they say it was exactly the same, but it really wasn't exactly the same at all. Is it necessary that, I mean, I think it's more, was it substantively different and different given the manner in which the judge decided it the first time? Okay, yes. It was not substantively different, but the judge never ruled that it was inapplicable. She never said, that's the wrong law, that's the wrong section. She just said, you didn't do analysis B. You didn't give me subsection B, which is the part of how much is necessary for your support. So there wasn't any disagreement on that I had used the wrong code section. So that stayed the same, you're right. So I don't see that, if we want to look at claim preclusion, again, it's not claim preclusion because the judge agreed with my side on that was the right number to use. So counsel, are you suggesting that if you went back and amended it again and changed the number, that you'd have a right then to come back in and re-litigate it a third time? See that's an interesting question. That is an interesting question. Because actually under the rules technically, but there is a case that says even if you amended it, it doesn't mean that the amendment's valid. But technically, yes, and in a way, but then again, that would always make an appeal not worthwhile. Why not just sit there and amend all the time, right? So this isn't- I think because you can't do that. Right, yeah. It's just sort of, I'm just guessing that's why you appealed. Right, yeah, exactly. So the rules are really fuzzy. I think they're inconsistent in this area and incoherent. And there needs to be some fine-tuning on how this actually happens. But anyway, so with res judicata, that's the reason why I believe that doesn't apply. And then the same for collateral estoppel. We don't really have something that was on the merits. In May when she looked at this, the judge specifically said, we're withholding part B. So there was no final on the merits, this whole cause of action decided. Now, the nature of the claim, this settlement was not just about money. You know, I object to the $167,500 and the way it was split up. But if you look, there's seven other pages of other stuff. And like, they changed my life story. They made admissions that I completely object to. They took away my right to a jury trial. They've prevented me from doing any future claims against Ford in the future, or any of Ford's affiliates, or, you know, everybody else. I couldn't find a case, and I didn't see one briefed by the other side that said, a trustee can do that. These are personal, my personal constitutional rights. I consider it, you know, the settlement agreement, I consider that to be slander in the very first page. Other people are using it to their advantage as we speak. And that is, I think that that's why it ties in that this exemption should have been exempt, because it is of such a personal nature. It kind of shows that it is of such a personal nature, that you have all these other things that are in there. If a trustee's going to settle something, you settle breach of contract case, very easy just to give the dollar amount and do that. But there's nothing in the code, in the federal bankruptcy code, that says trustee can go ahead and waive these other six or seven pages worth of things. And I object to that part. Also then, talking about the money, I did have like just one sentence in my brief about that. Number one, the breach of contract was on Ford's complaint against me. My complaint against Ford was Reese Levering and IIED. And what the settlement said was, the settlement said $150,000 for breach of contract, makes no sense. And it said, whatever that other amount was, $16,750 for IIED. All right, you're at 447, you can keep going or save your time? I will save my time, but I will say that that apportionment was wrong. Okay, thank you. All right. They're delaced, is that? Delaced, Your Honor. Delaced. Yeah. Okay. So thank you. It pleases the court. Aaron DeLay, Stanning Gill, Israel and Krasnoff, our name just changed, so that's not rolling off the tongue very easily. But for the appellee, the appellee, Jeffrey Golden, is also here. He's on the next matter, so you'll get to hear him as well, something separate. Your Honor, stepping back, fundamentally, prior to the trustee's appointment, there was a, debtor filed her schedules, and in the schedules there was a claim of exemption in a particular set of litigation claims. The prior or the former trustee objected, and a creditor objected, and there was a hearing before the bankruptcy court on those objections. The debtor appeared, she filed papers, and there was a ruling. There actually were two orders that came out of that, one on the former trustee's objection, and one on the creditor's objection, and the debtor didn't timely appeal, and- But let's go back then, because there were two tentatives, and then there was hearings, and the trustee's hearing does, the tentative does have some wiggle in that, as to, you know, based upon the unknown liability that time, and then Judge Smith did have language in the trustee's exemption hearing that you need to amend, so how does that affect finality for the purposes of that appeal? One, I think that, you know, the case law is clear that there is finality, that those were final orders, but addressing that specifically, the rule 1009 provides that, and the debtor referenced it too, that exemptions can always be amended, you know, it provides that list of things that can always be amended, but that doesn't mean that the debtor is entitled to the exemption. And here, with respect to the finality issue, there's nothing in the orders that says that they weren't final. Judge Smith doesn't say at the hearing that these aren't, her decision isn't the final hearing. What she said is what the law is, is that, go ahead and, you know, I don't have the quote in front of me, but, you know, essentially, amend your exemptions and we'll deal with the objections that come. And that's what happened. If the debtor, and then the debtor's, the order, particularly from Ford's order, because it attaches the tentative, which is incorporated in the order, is very clear what the court is doing. It says the debtor didn't meet her burden on that issue. There is, there is ramifications to the, to Judge Smith's ruling in that respect, and that she's, she's deciding these exemption claims on the merits. Well, and there was ultimately an appeal of the, the trustees, at least, at least the trustees' objection to exemptions. There was, and now getting to that, so then the debtor did file a late appeal from one of the two orders. It was unclear at the time, she, she, there was kind of a flurry of appeals at that time, whether she intended to appeal from both, but ultimately this appears that only, only it decided on one of the issues. And it was always a question in my mind whether both orders were being appealed. But ultimately, the BAP ruled and dismissed the, the appeal from the trustee's order as untimely. And the debtor's argument in that respect was that the order was, in making the appeal, because you've got a, an immediately a ding notice from this court saying your, your appeal's untimely, please explain, was, wasn't final. And, and she said it wasn't final, citing the same language from Judge Smith at the ruling, or at the hearing on that. And, and, and, and the BAP's comment in its order dismissing the appeal as untimely is that there's nothing in the record that says it was untimely. And I, I, the, and it didn't, it didn't believe that, it believed that the orders were final. You know, that order particularly was final and had you know, was final. Didn't say preclusive effect, but was final at that point. Again, there was no subsequent order ruling with respect to the other order, but I think that the BAP addressed finality in dismissing that appeal. It found that the appeal wasn't, or excuse me, that the order wasn't interlocutory and was final. And again, on finality, you look to see what the judge's, you know, intention was. Well, there's nothing in the orders. Judge Smith's ruling is, is very clear. It doesn't say, again, this is my interim order. There's no interim language. I, I've never seen an interim exemption order, but I guess you could do it. It just, she's not intending to make a final ruling. So, I hope that answers your question. Moving on to residue, sorry, then moving on to the rest of the story is that the debtor files, trustee's appointed, the debtor amends her schedules. And, and, and what does she do? She claims the exact same statutory claims of exemption under California law in the exact same set of litigation claims. And it is true that during this time period, the trustee had settled those claims, as court heard the appeal of that 1919 motion before. But that 1919 motion isn't before the court here. It was the prior appeal, and those issues will be decided, whether that was reasonable and all that, in its decision on, from that appeal. But with respect to the claims of exemption, the trustee objected. And he objected on the grounds that the debtor already had her hearing on the merits on those exemptions, and that Judge Smith had already ruled in two separate orders denying them. And the separate claim of exemption, the new claims of exemption, were the same. And the debtor, clearly unhappy with that, and wasn't entitled to a second bite of the apple here, because nothing was new. And the debtor's argument that the value changed really doesn't affect that analysis. Because it, Judge Smith ruled on those specific exemptions, 704-210 and 704-140. Those are the same two exemptions that were claimed again. She ruled that the debtor hadn't shown that the litigation proceeds were reasonable and necessary for her support. And those are the same litigation claims that were being brought again. So the value there doesn't make a difference. It's just what's reasonable and necessary for her. She wasn't able to show it with the lower amount, because she didn't provide, apparently, any evidence on that respect. And Judge Smith's ruling in the Ford decision, or on the Ford order, is really clear. It says, on the 704 issue, it says, this court can nevertheless sustain Ford's FMCC's objection to the debtor's claim of exemption under 704-140, because the opposition makes no showing as to Subjection B. She then cites Goose and Smith, and she says, both these cases contemplate the entitlement to exemption of emotional stress damage under 704-140 upon a proper showing of the amount necessary for the support of the judge and debtor and the spouse of the dependent. And dependence of the judgment debtor. She says, the debtor spends much of his opposition to this particular objection on other things. It doesn't, you know, it doesn't address this issue. And at the end, her conclusion is, the debtor has not demonstrated that even if there was the full amount was exempt, the proceeds would be necessary for her support. Thus, the court can sustain Ford's objection. So the debtor didn't meet her burden. And the debtor's argument earlier was that, well, it wasn't her burden to meet. But that's contrary to California law and kind of the shifting of the burdens here in this situation. The rules do say under 4003 that it's the objector's burden. But the case along the Ninth Circuit is clear that where state law flips the burden, that then, as it does here under 704-140, that the debtor has the burden to show what's reasonable and necessary for support. And she didn't do that. And she doesn't get a second bite of the apple by just amending again because she failed to meet that burden the first time. It's her burden. She was supposed to put in evidence. There was a hearing on that. And the court ruled, and that's the purpose of the finality of that order. She doesn't get to do that now. So the trustee objected, and he raised essentially res judicata and collateral estoppel arguments. And the trustee's position is that both under a res judicata claim preclusion and separately under collateral estoppel issue preclusion, that both of those separately apply. All of the claims under res judicata, they're the same. You've got prior final orders, and you've got the debtor and a representative of the estate or creditors making the objections under res judicata. And under collateral estoppel, you've got the same issues. You've got the statutory sections. You've got the claim in the litigation claims, that specific asset, and that same thing. And you've got the identical issues. You've got final orders, and you've got here under collateral estoppel, you only have to have privity or the party to whom you're asserting it. So here we've got the debtor. So the debtor asserted those things. You can't assert them again. With respect to the debtor's request for continuance, the debtor filed her papers less than 24 hours before the hearing. And I was at the hearing, the debtor was at the hearing, and it was 416 pages. Now the debtor concedes here again this morning that she was just really busy. There was a lot of stuff on the docket. I recognize there's a lot of stuff on the docket because the debtor is very litigious. And that's not something that the trustee is doing, but the court has its rules. And the rules require opposition papers to be filed 14 days before the hearing. So it's an abusive, we have to evaluate it under an abusive discretion standard, and why would that not be an abusive discretion? Is the question. And here, and by the way, motions for continuance, kind of coupling those two together, are due under our local rules three days ahead of time. And here, within 24 hours, the papers are filed, and the debtor, excuse me, the trustee and the court are there at a hearing with sort of, I hadn't even seen them yet, to be honest, I was at the hearing, they hadn't come through ECF yet, but we had just gotten word that something had been filed. And the court refused to consider them. And that's not an abusive discretion, Your Honor. And when you work your way through the analysis under continuances, if you're using that, what does the court look at for continuance? You look at substantial prejudice to the debtor. The debtor has to show in the Ninth Circuit substantial prejudice. And here there is none, because this is a pure legal question on res judicata and collateral estoppel. And in my opinion, and I think the court should agree, that there was nothing that she could have filed in those papers that would have changed that analysis. Because when you're simply looking at res judicata and collateral estoppel, and that's the four corners, nothing new, nothing new would help. She could have argued, she was allowed to argue. She was allowed to argue. The, I think that her argument would have been limited to what was in our papers. The court did not consider her new papers with that clarification. And the other things that you have to look at for continuance of their abusive discretion, was it timely, you know, or not timely? Was, you know, sorry, Your Honor. Was there diligence in making the request? No, I don't think so. She did it essentially 24 hours before the hearing. What's the likelihood that the need for the continuance would be met? Her grounds for the continuance is she wanted to have an evidentiary hearing. And here, there was no evidentiary hearing required. The only reason you have an evidentiary hearing is so there's material evidence, or material facts in dispute. Here, there weren't any. It was a pure legal question. So, the debtor's request for an evidentiary hearing, again, separately, would not have been an abusive discretion, because there was no need for an evidentiary hearing. The court didn't have to have one. Looking at the other factors, inconvenience to the court. The debtor dumped these papers on the court, and the trustee, 24 hours ahead of time, the court would have to have another hearing. Again, prejudice or harm to the requesting party from the court's denial. Again, I don't think there's any prejudice to the debtor by the court going forward, because we were looking at this purely as a legal issue. While, on the other hand, there's quite a bit of prejudice to the trustee and the estate, because we have to have another contested hearing, which we were prepared for that morning, on another day. And that's quite an expense to the estate. Was any of the information or the, was any evidence presented in that late filing regarding support and the need for support? I believe, you know, I've not, the debtor provided a new declaration. And in that declaration, I believe she asserts several facts that would fall into that bucket of facts. I've not analyzed them separately. And the court didn't consider them. But I think it's true that there was evidence there. The, focusing on the debtor's due process argument, just for a moment, to be candid, Your Honor, I don't understand it. And I think it sort of turns due process on its head. The issue, at least that the debtor raises in her brief, is that she, her due process violation, due process rights were violated because she's not getting a jury trial in the state court litigation matter that was settled by the trustee. That's not a due process violation. Not here. I don't understand it. With respect to the personal nature of the claims that the debtor argues, we've addressed that in the prior appeal. It's not an issue here on appeal. Again, what the argument is, is those claims under 541, Sierra Switchboard and the other authorities are property of the estate. The trustee was entitled to settle them. And he did. Your Honor, that's generally my facts and my argument. Let me see if there's anything else that the debtor raised. Oh, with respect to the allocation of the exemption. Again, I don't believe that's an issue here on the appeal. It was considered in relation to the motion to compromise. It wasn't even an issue raised in that appeal. What we had, and just as the court knows, is that the trustees, Special Litigation Council, in coming up with that settlement, determined that that's how the amount of the settlement should be a portion between the two major claims in that lawsuit, 10% for one and 90% for the other. And there was evidence in relation to the motion to compromise and why that was appropriate. But again, it's not an issue here on the appeal. And if the court has any other questions, I think that's sort of summed it up. Any questions? No, thank you. Thank you, Your Honors. Thank you. Thank you. Ms. Elbert-Sheridan, you have four minutes and 46 seconds. It is not true that I was allowed to orally argue at the hearing in January 2019. If you look at page six of the reporter's transcript, the court clearly says, okay, hold on, I thought you wanted to make a record about the substance because I'm not going to hear the substance of the motion. That puts opposing party at disadvantage trying to respond to something that he's not had a chance to review. And I said, okay. And then the court said, so what I was, what I meant when I said that I'll allow you to make your record is to make your record regarding the service issue. Okay. But is it unfair where you filed things late to not allow you to argue for the first time at a hearing where he hasn't had any opportunity or the other side hasn't had an opportunity to review your arguments? Is that an abuse of discretion? And if so, why? Well, this was definitely unfair. This was unfair. The reason why it was unfair and prejudicial to me and not the other side is because I requested, number one, I requested a continuance so that the other side would not be prejudiced. But does she have to give you one? She doesn't have to give me one, but she could, especially here with exemptions because the rule under exemptions is that they're supposed to be liberally construed. A debtor is supposed to be given every exemption that they're entitled to. It's not, exemptions aren't supposed to be a playground for the trustee to try to scoop more out of the estate. Given that this is the second time the exemption issues had come up, you don't agree that it's necessarily res judicata or collateral issue preclusion, claim preclusion, is that not something that could factor into a determination of whether to prolong the process? Well, I'm not sure I understood your question. So, the point is, you're saying, you're saying in effect she had to give you enormous latitude. And I'm asking, because this is an abuse of discretion standard and, you know, I'm asking in analyzing this, can't we take into consideration the fact that you'd already had one round with her on exemptions for these particular assets? But the material difference here is the claim was liquidated. The judge made, emphasized in the May hearing, May 2018 hearing, that the claim was unliquidated. We didn't know what it was. At that point in time, we thought I would be able to go to trial in June 2018. That's where everybody's mind was on this issue. And you have to read the transcript in its totality. Well, and we have, but I'm asking a different question. Okay. Which is, there's, again, abuse of discretion standard, is that not an appropriate factor for us to weigh in evaluating whether she abused her discretion? Well, yes, because if we're just looking at res judicata, we're talking about an issue of law. We're talking about legal argument there or collateral estoppel. I could have, you know, she could have let me just argue the legal principles and pointing out, you know, the various differences that this truly wasn't on the merits and the reasons why. And I couldn't even go there. So we didn't even have to get into the dearth of the 416 pages, you know, to show the amount of support. So, yes, I do agree with you. Well, I'm actually saying it the other way. Oh, okay. Okay. So then maybe my answer is no, and this is why. Yeah, I think that's, okay. Okay. So understood. Okay. I also had already filed my proof of claim, which showed how much I had invested in the case and the cost. That was already before the court. It was, like I said, it was new because it's not unliquidated. It went from unliquidated to liquidated. The courts did refuse to look at the 416 pages. Because I'm a debtor, I'm not allowed to use the ECF system. So those pages were filed during the day and uploaded during the day, the day before of the hearing. I had asked, and it's in my papers, I had asked the other side for their papers because I didn't receive that motion. They knew that earlier in the week that I hadn't received that motion. And I even put in my papers that they refused to give me the papers. You know, they refused to email me a copy to get those papers, and I had to get them on my own. So they were well aware, even 24 hours before the hearing, that I was going to oppose that motion, and I needed the papers, and I didn't have the papers. I'm going to try to get through the. Did you send them to them, or did you simply upload them? I can't recall. I can't recall. Okay. I'm trying to make sure I hit everything. Well, your time is three seconds. Okay. All right. Thank you very much. Thank you. This will be submitted.
judges: Taylor, Spraker, Gan